Barrett Cmty District 6 Section of Second Article Third Act Section 1 Things,   asumindo my appointment May it please the court, William Dunleavy, counsel for appellants, Bill Burleson, John Mark and Craig Benite, and we all thank you for this opportunity for oral argument. I'm actually at 920 Mountain Time scheduled for my Zoom government training in the 10th Circuit for an oral argument by Zoom next month. So we appreciate the live oral argument. Looking at my admission certificate recently, I realized I've been coming to New Orleans to make these arguments for more than 20 years. Most of those arguments over 20 years were summary judgment arguments in employment cases. Most of those summary judgment appeals were claimed fact questions. Most of those fact questions involved police officers or other public employees and a number of those cases involved the First Amendment like today. With all of the appeals I have argued in this court over more than 20 years, all of the cases I've argued in Texas state courts over 28 years or nearly 28 years, never in any of those cases have I had the trial judge tell me at the pre-trial conference, I think there's a fact question. I believe there's a fact question before granting summary judgment. Judge Mazzant was right. I recall Mr. Crawford and I, Mr. Crawford's here today, we went to that pre-trial hearing more than two years ago and I recall asking him, why are we here? The magistrate recommended dismissal. Judge Mazzant started the pre-trial hearing and he said, I believe there's a fact question. Judge Mazzant was right. Fact questions here preclude summary judgment. Even if Judge Mazzant was wrong about the president of the college being a member of the board, he was right that the president had that knowledge that the board also had. The key fact questions in this case about knowledge that the board of trustees had, did the board of trustees know about the plaintiff's complaints? Did the board of trustees know about the lawsuit? Did they know about the allegations in the lawsuit? Did they know about the pervasive illegal conduct at the Collin College Police Department? Did the board know about the retaliation? Did the board ratify that retaliation? Those are fact questions that should have precluded summary judgment because of course the board knew. We presented evidence that the board knew. Collin College even offered some evidence that the board knew and I'll get to that. But the plaintiffs are entitled to reasonable inferences drawn from the evidence and the reasonable inference here is the board knew of what was going on, what was complained and what was happening. Summary judgment is not appropriate with that knowledge. In this Texas case or case from Texas, each judge on the panel, on this panel here, was a Texas lawyer before he was a judge. In Texas, we have the concept that matters that are not readily controverted can't be the basis for summary judgment. In Texas, we have the Supreme Court case Casso v. Brandt. I wish I had cited that case. 776 Southwest 2nd 551, 1989. It's a defamation case. It's a First Amendment case. It talks about summary judgment of state court versus federal court. It says knowledge is a matter that cannot be readily controverted. In this case, Collin College denies any knowledge. Collin College offered the declaration testimony from Robert Collins, the chairman of the Board of Trustees, who said none of the plaintiffs ever spoke to the Board of Trustees as a corporate body about the matters they're complaining about in the Third Amendment complaint, including speech about illegal traffic stops, the traffic plan, illegal orders, driving while intoxicated offenses, illegal trespass warnings, illegal smoking warnings, or the College bookstore theft. And then Mr. Collins continues, I can affirm that the Board of Trustees had no knowledge of any of the plaintiffs' purported speech on any of these matters. That is demonstrably not true. In fact, Mr. Collins is the one who told us it's not true. He gave that declaration on August 6, 2018, and about seven weeks later, he testified and admitted in his deposition that the Board knew about the lawsuit in quote 2015 would be my guess. Judge Mazant was right. It was a fact question. He said I think there's a fact question there. Judge Mazant heard the college president, the college president was attended every board meeting. The former college president, Kerry Israel, said he was at all the board meetings. He said he reported to the board. The college president by board policy, BAA legal, is a fiduciary. College president fiduciary duties require him to be a fiduciary. The college essentially admits this in their brief. On page 30, they cite a policy, BFA local. The chief executive of the college district is the district president. The district president will, one, serve as the chief executive officer of the college district with responsibility to the board for ensuring that the college district's strategic direction and operations are consistent with its mission, purpose, and core values and in compliance with state and federal laws and regulations and accreditation guidelines. Of course, the college president reported these allegations to the board. Counsel, do you, do you agree that there is a difference between the board's potential knowledge of the officer's speech and the board's knowledge or adoption of a policy of retaliation? Yes, absolutely, your honor. And I will talk to this issue of what's the policy and is there a policy of retaliation and did they know about the policy of retaliation. But I absolutely will discuss, as long as I have enough time, I'll get to that point. The college representative at the 30B6 deposition was not prepared. She wasn't really able to testify about what the board knew. She said, I talked to the board chairman, what did you talk about? She couldn't really detail that. When we got the board chairman a few weeks later or months later, he couldn't tell us what they talked about. I said, if you wanted to know what the board knew, who would you ask to find out? Ms. Davison, the same person they presented as the representative who couldn't tell us. That's the part of the basis for the continuance motion. But even though she was unprepared, Ms. Davison proved the board's knowledge. One of the topics she was required to testify about were the corrective actions taken due to any plaintiff's allegations of violations of law that are the subject of this lawsuit. And the question, so when the board heard the policy in November 2017, isn't it true that was designed to correct that identified problem of police officers stopping motorists on campus without legal authority to do so? Answer, yes. And that was one of the issues that the plaintiffs raised in the lawsuit back in 2014. Answer, I believe so. And then the question, why did it take so long to make the change? There have been staffing changes, and it just takes time to get things in line. So the college admits that policy was changed in response to the plaintiff's complaints starting with the lawsuit in 2014. And the college argues that only the board can change policy. So if the board changed policy in 2017 in response to the plaintiff's complaints, how is it they didn't know about those complaints? There's a cause and effect. They knew the cause of why they changed the policy. They knew about the plaintiff's complaints. They could not have been unaware. When I argue these cases and when I talk about governing bodies, it's often the defense we didn't know. I call it the Sergeant Shultz defense. Back in the 60s and 70s, there was Hogan's Heroes, and Sergeant Shultz never knew. His answer was, I know nothing. I see nothing. And that's the way these cases are defended. The College Board of Trustees had the knowledge. There was a whistleblower lawsuit in August 2014 filed in Dallas. It was transferred in December 2014 to Collin County. The Dallas Court of Appeals had the case in 2015. Newspaper stories in January 2015, or television stories. Newspaper story in January 2016. Dallas Court of Appeals opinion, February 2017. First Amendment claims made in the summer of 2017, September 20. The lawsuit was removed to federal court. Robert Collins, the board chairman, gave a declaration August 6, 2018. I know nothing. The board knows nothing. Seven weeks later, he admitted they had some knowledge. Judge Mazzan held a pretrial conference in February 2019. So over five years from filing the lawsuit to the pretrial conference, the board claims we never knew anything about this. In the brief, we summarized in a table the five years of agendas. I have no idea why 2015 is not there. I don't know why we didn't file that. But 60 board meetings, we have issues about the Texas Open Meetings Act. Did they say on those agendas what they're talking about? That's an issue in the state court. But 60 board meetings over five years, 52 of those 60 meetings, the board met with their lawyer, another fiduciary. The lawyer never told them about this case that alleges serious violations of civil rights, serious wrongdoing? Of course the board knew. To conclude, the board didn't know. You have to conclude that nine fiduciaries, those board members, didn't discover any of this over five years. That the board chairman, another fiduciary, never disclosed what he learned, whether in his deposition, given his declaration, to the other members of the board. You have to conclude that the college president of fiduciary never disclosed anything to the other board members. You have to conclude the college attorney never disclosed. If you're a city attorney and the city gets sued, do you tell the city council? I think so. That's what we have here, the governing body. The allegations are illegal traffic stops, illegal detentions, illegal trespass warnings, theft. The president told the board. It's not in the agenda. The president told the board. The lawyer told the board in one of those 52 meetings over five years. In the brief, Apolli says it's telling that we didn't cite some cases. It is. It's telling. I didn't cite all the cases. It reminds me of a quote from a Supreme Court justice, I don't remember who, talked about in every case there's three arguments. I wish I gave. That's the way I always feel about arguments, and it's the way I feel about every brief. I wish I had talked about Casso v. Brandt. I wish I had talked about Inge Bretzen v. Jackson Public School District, which says the loss of First Amendment freedoms, even for minimal periods, constitutes irreparable injury. Or R.A.V. v. City of St. Paul, the government may not punish citizens for their speech. I wish I had cited Burlington Northern and Santa Fe v. White for retaliation. Retaliation can include conduct that is harmful to the point that the actions of the employer could well dissuade a reasonable worker from making or supporting a charge of discrimination. It's telling that there's no written policy to retaliate. But there is a written policy that policy B.D.B. local, don't talk to the board. That's how that policy is interpreted. It says, college district staff may participate in presentations of pertinent material to the board as requested or authorized by the college president. It's interpreted as, don't talk to the board. That is telling. Employees at Collin College can't talk to the board. Something else is telling here. With all of the serious allegations of misconduct, the college does not deny. Sure, there's a general denial. But they defend this case by saying there was no harm to the plaintiff. And if there was harm, it's not due to the policy or the board didn't know. They don't say this didn't happen. They're just telling the board didn't know. So you can't hold this liable. I see my time comes to a close. I hope I answered the issue. We would raise the issue of the continuance on the 30B-6. The rep wasn't prepared. We were entitled to that. You've saved your time for a moment. Yes, Your Honor. Thank you. Mr. Crawford? Good morning. May it please the court. Charles Crawford for Collin College. So suppose, just for purposes of discussion, that the board knew about all of this that was going on, whether it found out from the president or from someone else. I understand that you dispute that, but I'm just asking you to handle that question in the abstract. Where would we be if it were established absolutely in this case that the board knew? Thank you, Your Honor. And for purposes of my answer, I will assume that what you've said is true. And the answer is that this court has already addressed that issue in the case that Appellant's Counsel still has not addressed, and that's Godot v. East Paris School Board. In fact, Judge Smith, you were on that panel. And in Godot, the court started off with the very unremarkable assumption that municipalities or college districts are not responsible under 1983 under respondeat superior. You must have a final policymaker whose policy was the moving force of the actual constitutional injury that the appellant complains about, not somebody else. And here, the constitutional injury that the appellants are complaining about is being retaliated for engaging in protected First Amendment speech. So, for example, they are not complaining that they were subjected to an unconstitutional traffic stop. And so the constitutional injury we're talking about is First Amendment retaliation, not traffic stops, not a bookstore theft, not DWIRS, not trespassing warnings. And in Godot, the plaintiffs made the exact same argument that the appellants do here, which was the board knew about the content of my speech, and therefore they are quoting from Godot. Godot's complaint alleges that the school board knew Shamblin was forcing Godot to alter the grades of her students and did nothing to prevent or stop it. The district court determined that there were genuine issues of material fact concerning whether the school board had an official policy of influencing the grades that the teachers provided their students. Godot's complaint and the district court's conclusion, however, misapprehend the nature of the official policy or custom that Godot was required to allege. In order to establish the school board's liability based on an adverse employment decision in response to her protected speech, Godot needed to demonstrate a policy or custom targeting the right that was violated, i.e., the right to engage in protected speech free from retaliation rather than a policy concerning conduct about what she spoke, i.e., the changing of students' grades. And so, Judge Smith, to answer your question, under Godot, it doesn't matter if the board knew about the conduct that the officers were complaining about, whether there were illegal traffic stops or there were problems with the bookstore theft or there were issues with trespass warnings. The issue is whether there was any evidence that the board knew of a widespread and persistent custom or practice within the college of retaliating against its employees for engaging in First Amendment protected speech. And the answer here is there was no evidence of that, none at all. In fact, Dr. Collins, who has owned the board of the In my tenure on the board of trustees, I am aware of no employee complaints, grievances, comments, or discussions complaining of or related to free speech retaliation by the college that have come before the board of trustees. In addition, the vice president, the corporate representative, the college's representative stated, based on my review of the meeting minutes and agendas, as well as inquiring of the secretary of the board to the board of the trustees, I found no employee complaints, grievances, comments, or discussions complaining of or related to free speech retaliation by the college that have come before the board of trustees over the last decade. And so, the district court was correct in granting summary judgment for the reason the court did, which is there was no evidence of a widespread custom or policy that the board of trustees could have constructive knowledge about in order to impugn 1983 liability for retaliation. That reason alone should justify the district court's summary judgment. Now, the appellants argue that the district court erred when he found that the college did not delegate its policymaking authority because the conduct you have to look at is the conduct of the final policymaker. And here, the court did not err. First, the testimony was clear. From the board chairman, the board of trustees maintains all policymaking authority for Collin College. The board of trustees has not delegated any policymaking authority to any officer, including the district president, the chief of police, or any administrator. The corporate representative, Vice President Davison, said, well, I'm very familiar with board policies. That's part of my role with the college, and the college does not delegate policymaking authority. The board maintains that. She also said, in answer to this question, would you agree that from 2013 to the present, it was Collin College policy not to delegate policymaking authority to any college police department authority? She said yes. The president stated, in answer to this question, as college president, you can't make policy because that's for the board to do. Agreed? The answer, correct. So the testimony was, the board has not delegated policymaking authority in the case. In addition, the board policies, which were part of the summary judgment record, further show that the written policies of the board show that the board maintains final policymaking authority, and it has not delegated that authority, and by way of example, we have policies BA, BAA, BBE, BD, BE, and BFA. BBE states, for example, the board has final authority to determine and interpret the policies that govern the college. The appellants made reference to policy CHA, saying that that was somehow a delegation of a policymaking authority to the police. However, that policy merely provides that the chief of police shall prepare a handbook or manual of procedure guidelines and regulations to implement board policy, not to make policy, but to implement policy. Also, within that same policy, it expressly states that the police chief is appointed by the board of trustees, the police chief is subject to the policies of the Collin College board of trustees, the chief of police may promulgate oral and hands, directives, and verbal instructions that are not inconsistent with the law and board policy. So, the chief of police may have decision-making authority, and even may have final decision-making authority, but he does not have policymaking authority, and it has not been delegated, and that is under the testimony and the board policy, and also Texas law. The Texas Education Code is interpreted by this court on numerous times, stating that with junior colleges like Collin College, the policymaking authority rests with the board of trustees, not in combination with any subordinates, such as presidents or chiefs of police. And so, as a matter of law, there has been no delegation of the board's policymaking authority, nor, as appellants have argued on appeal, has the board ratified any inappropriate conduct. I first note that although appellants complain on this appeal that the district court erred ratification, their summary judgment response did not clearly argue ratification. So I am not convinced that that issue is even properly on appeal, but just assuming for the sake of argument that it is, this court has repeatedly limited ratification to extreme factual situations, and according to this court, ratification is seldom, if ever, found by this court. This case does not present an extreme factual situation, and notably, as this court said in the Peterson case, which is Peterson versus Fort Worth, a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality. Good faith statements made while defending complaints of constitutional violations by municipal employees do not demonstrate ratification. So simply because the college is defending itself in this lawsuit and may have learned about this lawsuit after it was filed is not a ratification of the events that occurred before the lawsuit. This is not an extreme factual situation, and notably, none of the courts requested permission to talk to the Board of Trustees about their grievances, about their complaints. They were never denied permission, and they never attempted to address the board at all about what they're complaining about, and so how could the board ratify what they don't know or only potentially learn after the fact, after a lawsuit had been filed, which they're allowed to defend themselves. There has been mention that the court erred in granting some judgment because the district court should have granted a continuance. However, under the factors for Rule 56F, the district court did not abuse its discretion as the magistrate judge expressly found, and it's supported by the record. The plaintiffs in this case have been afforded sufficient discovery opportunities. The court has allowed plaintiffs to take every deposition they requested and also extended the discovery and dispositive motion deadlines to allow them sufficient time to conduct such discovery, and the magistrate judge found, as affirmed by . . . adopted by the district court, the plaintiffs have not explained how additional discovery would lead to the information they seek, and I might note that in the more than ten depositions they took, the appellant's counsel never asked a single witness about the board's knowledge of retaliation against its employees who engage in First Amendment protected speech. Never asked that much. Your, excuse me, your, your brief is, is ten years out of date. The 56F that you cite hasn't existed since 2010. That's now under 56D, so you need to be a little bit more careful in your briefing. Yes, Your Honor, I apologize for that. In addition, the, the corporate representative was prepared. She testified that she had received the board minutes, spoke with the chairman, spoke with the president, reviewed board policies and documents, and notably, the appellants never filed a motion to compel that testimony. Never complained to the district court until they asked for a continuance in their summary judgment response, and so there was no abuse of discretion. And finally, even if the court were to determine that the district court erred on the summary judgment for the basis he did, which is that there was no evidence of board knowledge of widespread First Amendment retaliation against its employees, summary judgment is still proper for the other reasons raised in the summary judgment motions but not addressed in the additional reasons that the college raised that were not addressed. The first is that the appellants spoke as police officers employed by the college and not as citizens, and therefore the underlying speech is simply not protected, and that would bar the First Amendment claim for that reason in addition to the 1983 issue. The second additional reason was that the appellants had failed to allege a protected property interest, which is required to state a due process claim, and moreover, each received any due process that was required. And the third is that the appellants have not suffered any actionable, retaliatory, adverse actions as a result of any protected speech. For example, with Officer Burleson, the summary judgment evidence was clear and unrebutted that although he was terminated, he was terminated for not returning from FMLA leave despite a directive to do so, and that is well documented in the summary judgment evidence in the record. And so that is a legitimate, non-retaliatory reason for his adverse action that could not be tied to any potential protected speech he has. And so those reasons are all independent of the trial court's stated reasons, and this court, if it were to decide to find the court aired on 1983, should affirm the summary judgment motion for any one of those three reasons. It's clear that each of these officers were complaining about acts that they believed were crimes against the college, that they're responsible for investigating and taking care of and working with other law enforcement authorities about. And they complained to their higher ups, up the chain of command, until they didn't get the satisfaction that they thought they were entitled to, and that's when they went to external sources. And as this court held in the Corn v. Mississippi Department of Public Safety case, another case that Judge Smith, you were part of the panel of, it found that the alleged speech that started out unprotected because it was within their job duties and up the chain of command, that subsequently was made external, did not then become protected speech. I quote, the similar external speech that trails is also unprotected as it tracks internal complaints. And so we do not have protected speech. We do not have due process rights. There is no property interest in a promotion. Officers Mark and Benight were not terminated as of the summary judgment motion. They had not been demoted. They had not had their pay reduced. They had not been put on deep nights. There were no actions taken against them, and therefore, or that involved protected property rights. In addition, they received due process because, as they note repeatedly, they filed a number of grievances, and those grievances were heard. They just disagreed with the results. I have time left, so if the panel has any additional questions, I'll be happy to answer them. Otherwise, I will get back my time and rest on the record. Thank you, Mr. Crawford. Mr. Dunleavy, you've saved time for rebuttal. May it please the court. We're complaining about retaliation for speech, and we did show a policy. The board policy precludes employees from talking to the board. That's why the board has a policy that, if you complain, you will suffer retaliation. There is no written policy that we will retaliate against employees who speak out, who exercise their First Amendment right. We concede that. There never is a First Amendment policy or one that precludes or violates speech, but that's what happens. Yes, the knowledge they gained in the lawsuit filed in 2014, the amendments through to 2019 alleged it was continuing. Certainly, they can defend themselves, but they had the knowledge, and they took no action to correct, and that is ratification. This is the extreme case. They're complaining about violations of their First Amendment rights. They are reporting violations of others' civil rights. The board knew the plaintiffs were harmed. The board knew that they were complaining of material harms, but they're also complaining about the infringement of their speech rights, and the policy that says, don't talk to the board, or that's interpreted, don't talk to the board, dissuaded reasonable people from talking to the board. The grievance policy does not allow the plaintiffs to go to the board with their complaints. Perhaps, we will not be able to convince a jury that the board knew. Perhaps, we will not be able to convince a jury that there is a policy of retaliation, but we're not there yet. We should be given the opportunity to present that evidence of the board's knowledge, and the question of did they ratify with knowledge of what was going on at Collin College. On this motion for summary judgment, there is a fact question. Judge Mazant was right. There is a fact question as to the board's knowledge. There is infringement of the plaintiff's First Amendment speech rights. Just to briefly talk about the other issues of delegation, we presented evidence, and we discussed it in the brief, the evidence of delegation of actual policy making authority. We asked for the continuance because we did ask the witnesses. The only two witnesses who would know, Kim Davison, the 30B6 representative, who was not prepared, she said she read agendas, but not the certified executive session secret agendas, which the college was required to keep. Even the board president said, looking at the agendas, it would be difficult to understand what's in there. The college president, Mr. Israel, said they're very judicious in what they put on the agendas, so you don't know what they were talking about in the executive session. We also complained multiple times. I didn't locate in the last 15, 20 minutes all of the different hearings, but we had discovery hearings on April 9, 2018, just to get depositions of somebody who was knowledgeable. March 24, that's docket entry 50. July 24, 2018, docket 76. August 29, 2018, docket 101. We had a hearing in September, docket 112. We sought this discovery. We were denied this discovery. The college was required to present a prepared representative. They didn't. We asked about the knowledge. We were not told because the witness was not prepared. That is an abuse of discretion, acting without reference to guiding legal principles, the one that says we get a prepared representative. There is a fact question. We ask the court to reverse the summary judgment and allow us to attempt to present these claims to a jury. Thank you.